**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **TOTAL QUALITY LOGISTICS, LLC,** | |
| Plaintiff, | Case No. 1:20-cv-606 |
| | JUDGE DOUGLAS R. COLE |
| v. | |
| **JOHNATHON ACKISS, et al.,** | |
| Defendants. | |

## OPINION AND ORDER

This cause comes before the Court on Plaintiff Total Quality Logistics, LLC, and Defendant Proactive Specialized Logistics, Inc.'s Briefs regarding the status of their settlement (Docs. 27, 28), which the Court construes as a request for declaratory judgment on the enforceability of the settlement agreement. For the reasons that follow, the Court concludes that the parties have an enforceable settlement agreement, and that the settlement agreement includes, as a subset of compensatory damages, the availability of attorneys' fees to the prevailing party in the event of an action for breach. Accordingly, because the parties have an enforceable settlement agreement, the action shall remain **DISMISSED** as to Defendant Proactive Specialized Logistics.

## BACKGROUND

**A.  Factual And Procedural Background**

Defendant Johnathon Ackiss allegedly worked for Plaintiff TQL for approximately two and a half years, between 2017 and 2020. (Compl., Doc. 2, #63).

In accepting employment with TQL, Ackiss allegedly signed a noncompete agreement that, among other things, prohibited him from working with any TQL competitor or recruiting other TQL employees for one year after the end of his employment. (*Id.* at #67). Ackiss also agreed to keep confidential any trade secret or otherwise confidential information to which he was exposed while working for TQL, and agreed to pay TQL's attorneys' fees if it had to sue him to enforce the terms of the agreement. (*Id.* at #66–68). TQL alleges that, after Ackiss left TQL, he went to work for Defendant Proactive Specialized Logistics, which TQL alleges is a competing freight brokerage company. (*Id.* at #64, 68). TQL says Ackiss began with Proactive within a year (in fact, about two months) after leaving his job at TQL, thereby violating the terms of his noncompete. (*Id.* at #68). TQL filed a Complaint in Ohio state court on July 8, 2020, asserting a claim for breach of contract against Ackiss and claims for misappropriation of trade secrets and tortious interference with contract against both Ackiss and Proactive. (*Id.* at #69–73). Ackiss and Proactive timely removed the action to this Court. (*See* Not. of Removal, Doc. 1).

TQL and Proactive began contemplating settlement at least as early as June 2021, when TQL sent Proactive a draft settlement agreement. (Jones Aff., TQL Br. Ex. 1, Doc. 27-1, #288–89). That draft included a provision that allowed "the prevailing party … to recover its reasonable attorney's fees from the non-prevailing party" in the event of a dispute arising out of the settlement agreement. (*Id.* at #288–89, 297).

On May 23, 2022, TQL and Proactive mediated before a Magistrate Judge of this Court and achieved a settlement. (05/24/2022 Min. Entry). The next day, having been advised of the settlement, the Court dismissed the action as to Proactive, but provided that "any of the parties [could], within 60 days and upon good cause shown, reopen the action as to [Proactive] if settlement [was] not consummated." (Order, Doc. 26, #280). The Court also expressly retained jurisdiction "to enforce the settlement agreement of the parties." (*Id.*).

On Wednesday, June 29, 2022, counsel for TQL informed the Court that the parties were at an impasse on a settlement term, and that they would need to reopen the action as to Proactive. At a telephone status conference on July 8, 2022, the parties and the Court discussed the purported impasse, which centered on whether the settlement agreement reached at the mediation on May 23 did or did not include a provision regarding recoupment of attorneys' fees in the event either party brought an action to enforce the settlement agreement. (*See* 07/08/2022 Min. Entry). The Court requested briefing on the issue, and extended the 60-day limit contained in the May 24 Conditional Dismissal Order to allow the Court to consider the parties' submissions. (*Id.*). In accordance with the Court's direction, the parties submitted cross-briefs on July 29, 2022. (Docs. 27, 28). The matter is now before the Court.

**B.     The Parties' Arguments**

TQL argues that the Court should hold that there is an enforceable settlement agreement, and that the agreement includes the reciprocal fee-shifting provision. According to TQL, the parties had contemplated the inclusion of TQL's "standard

3

settlement terms" at the May 2022 mediation. (TQL Br., Doc. 27, #284–85). Because TQL had included a fee-shifting provision in its initial draft agreement (almost a year earlier), TQL says Proactive must have understood the "standard settlement terms," and thus the final agreement, to include the fee-shifting provision. (*Id.*).

Separately, TQL argues that the fee-shifting provision should be included because it reflects a pre-existing right under Ohio law. (*Id.* at #286). While Ohio generally follows the default "American Rule," which requires each party to an action to bear its own fees and costs, TQL says that this Rule is modified in the context of settlement agreements. (*Id.*). Specifically, Ohio law permits recovery of attorneys' fees incurred as a direct result of the breach of a settlement agreement because such fees are considered compensatory damages. (*Id.* (citing *Rayco Mfg., Inc. v. Murphy, Rogers, Sloss & Gambel*, 142 N.E.3d 1267 (Ohio Ct. App. 2019)).

For its part, Proactive agrees that the settlement agreement should be enforced, but argues that the agreement does not include the fee-shifting provision. (Proactive Br., Doc. 28, #339–40, 344). First, Proactive argues that a fee-shifting provision like the one at issue here would be a material term, but that such a term "was not negotiated or even discussed" at the mediation. (*Id.* at #340). Moreover, even if the fee-shifting provision is not a material term, Proactive continues, the Court should exclude it from the agreement because it is not a "standard term." Proactive asserts that it cannot be a standard term because: (1) "standard" is too subjective a word to meaningfully represent any specific terms, (*id.* at #340–41); (2) "TQL never raised … the fee-shifting provision in the settlement agreement[,] in its demand

4

letter, at any time during the parties' lengthy settlement negotiations, or at the May 23" mediation, (*id.* at #342); (3) the fee-shifting term contradicts the "American Rule" on attorneys' fees, (*id.* at #342–43); and (4) Proactive "never would have agreed to the fee-shifting provision had it been discussed," (*id.* at #343–44).

## LAW AND ANALYSIS

"A district court may summarily enforce a settlement agreement if: (1) it has subject matter jurisdiction over the separate, breach of contract controversy surrounding the settlement agreement; (2) it determines 'that agreement has been reached on all material terms[;]'and (3) the 'agreement is clear and unambiguous and no issue of fact is present.'" *Stenger v. Freeman*, 683 F. App'x 349, 350 (6th Cir. 2017) (Clay, J., concurring) (internal citations omitted). Here, the Court expressly retained jurisdiction to enforce the settlement agreement in its May 24, 2022, Order. (Doc. 26).

TQL argues that the settlement agreement, including the fee-shifting provision, is enforceable, either because the parties understood the provision to be included in TQL's "standard settlement terms," or because it reflects the pre-existing position of Ohio law. The Court agrees with the latter proposition, and thus starts (and ends) its analysis with that argument.

To be sure, Proactive is correct that Ohio generally adheres to the "American Rule" with respect to recovery of attorneys' fees. (Proactive Br., Doc. 28, #342–43 (citing *Jerald K. Jaynes v. Robert C. Austin Jr.*, 20 F. App'x 421, 427 (6th Cir. 2001))). Thus, a prevailing party typically may not recover attorneys' fees as a part of the costs of litigation. *Berry v. Lupica*, 965 N.E.2d 318, 323 (Ohio Ct. App. 2011).

5

This rule, however, has exceptions. One such exception arises when the contract at issue in an action for breach is a covenant not to sue or a settlement agreement. *See, e.g.*, *Rohrer Corp. v. Dane Elec Corp. USA*, 482 F. App'x 113, 117 (6th Cir. 2012) ("Ohio law allows a court to award attorney[s'] fees as compensatory damages when a party's breach of a settlement agreement makes litigation necessary, even where none of the exceptions to the American Rule have been shown."); *Wilson v. Prime Source Healthcare of Ohio*, No. 1:16-CV-1298, 2018 WL 1127653, at *4 (N.D. Ohio Mar. 2, 2018); *Shanker v. Columbus Warehouse Ltd. P'ship*, No. 99AP-772, 2000 WL 726786, at *5 (Ohio Ct. App. June 6, 2000); *Rayco Mfg.*, 142 N.E.3d at 1275; *Myron C. Wehr Properties, LLC v. Petraglia*, 65 N.E.3d 242, 254 (Ohio Ct. App. 2016). *But see Shamrock v. Cobra Res., LLC*, 191 N.E.3d 1197, 1217 (Ohio Ct. App. 2022) (declining to award attorneys' fees in action for breach of settlement agreement). As to such contracts—i.e., those where "the end of litigation is an essential component of the consideration exchanged as part of the [agreement]," *Rayco Mfg.*, 142 N.E.3d at 1275—one of the express "benefits of the bargain" is the *lack* of litigation expenses. Thus, Ohio courts say, awarding attorney's fees is the only way to make a non-breaching party whole. *See, e.g.*, *Shanker*, 2000 WL 726786, at *5. In sum, as to such contracts, the attorneys' fees are tantamount to compensatory damages. *See Petraglia*, 65 N.E.3d at 254 ("[A]ttorney fees may be awarded where it can be established they were the result of the offending party's breach of [a] settlement agreement and sought as compensatory damages and not merely as costs of the action.").

6

Here, the settlement agreement falls squarely into this "compensatory damages" exception to the American Rule under Ohio law because an essential component of the consideration was "the end of litigation," at least as between TQL and Proactive. Thus, to borrow TQL's verbiage, "it does not matter" whether the fee-shifting provision was expressly included in the final agreement or not. (TQL Br., Doc. 27, #282). Rather, under Ohio law, the default rule is that compensatory damages for breach of a settlement agreement include attorneys' fees. Accordingly, if the parties wished to depart from that default rule, they would have had to affirmatively evince that intention prior to their oral agreement at the May 2022 mediation.[1] *Cf. ISHA, Inc. v. Risser*, No. 1-12-47, 2013 WL 2316248, at *7 (Ohio Ct. App., May 28, 2013) (noting that "parties are free to change [a] default rule by contract"). They did not do so.

That leaves Proactive's claim that it would not have settled had it known that the agreement included this term. (Proactive Br., Doc. 28, #343–44). Although Proactive does not explicitly request rescission, its argument gestures toward the doctrine of unilateral mistake (that mistake being Proactive's failure to recognize that its agreement to "standard terms" under Ohio law would include a provision permitting recovery of attorneys' fees). But under settled contract law principles, to succeed on such a request, Proactive must show that its mistake (1) runs to a "material feature"; (2) "is of such grave consequence that enforcement of the contract as made will be unconscionable"; (3) "occurred notwithstanding the exercise of

---

[1] To be clear, the Court does not decide whether the parties *could have* effectively rejected the default rule in this context; only that they did not.

7

ordinary diligence by the party making the mistake"; and (4) the other party "can be put in status quo." *Leach v. Leach*, 80 N.E.3d 1044, 1051 (Ohio App. Ct. 2016) (*quoting Gartrell v. Gartrell*, 908 N.E.2d 1019, 1023 (Ohio Ct. App. 2009)). Proactive cannot show, at minimum, the second element. That is, the Court finds that a prevailing party fee-shifting provision in a settlement agreement does not make the resulting contract "unconscionable" under Ohio law—indeed, as discussed above, it is the default rule.

## CONCLUSION

For the foregoing reasons, the Court concludes that the parties have an enforceable settlement agreement, and that it includes, as a subset of compensatory damages, the availability of attorneys' fees to a non-breaching party in the event of an action for breach. Accordingly, the action shall remain **DISMISSED** as to Defendant Proactive Specialized Logistics.

**SO ORDERED.**

September 2, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**